UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kelly Marie Engebretson,

    Plaintiff,

  v.

             **MEMORANDUM OPINION**
             **AND ORDER**
             Civil No. 14-1435 ADM/FLN

Aitkin County, et al.,

    Defendants.

_____

Jonathan A. Strauss, Esq., Sapientia Law Group, Minneapolis, MN, on behalf of Plaintiff.

Jamie L. Jonassen, Esq., Jardine Logan & O'Brien PLLP, Lake Elmo, MN, on behalf of Aitkin County, Big Stone County, Dodge County, Isanti County, Kanabec County, Lake County, Otter Tail County, Pine County, Washington County, and Wright County Defendants.

Jon K. Iverson, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of City of Biwabik, City of Bloomington, City of Breitung, City of Brooklyn Park, City of Burnsville, City of Cambridge, City of Coon Rapids, Dakota Communications Center, City of Eveleth, City of Floodwood, City of Golden Valley, City of Inver Grove Heights, City of Moorhead, City of Moose Lake, City of Mounds View, City of Oakdale, City of Roseville, City of Sartell, City of St. James, City of Staples, City of Virginia, City of White Bear Lake, and City of Isanti Defendants.

M. Alison Lutterman, Esq, Duluth City Attorney, Duluth, MN, on behalf of Defendant City of Duluth.

Toni Beitz, Esq., Hennepin County Attorney, Minneapolis, MN, on behalf of Defendant Hennepin County.

Darla Boggs, Esq., Minneapolis City Attorney's Office, Minneapolis, MN, on behalf of the Defendant City of Minneapolis.

Kimberly Parker, Esq., Ramsey County Attorney's Office, St. Paul, MN, on behalf of Defendant Ramsey County.

Nick Campanario, Esq., St. Louis County Attorney's Office, Duluth, MN, on behalf of Defendant St. Louis County.

Lawerence Hayes, Esq., Office of the City Attorney, St. Paul, MN, on behalf of Defendant City of St. Paul.

_____

## I. INTRODUCTION

On September 30, 2014 the undersigned United States District Judge heard oral argument on the above captioned Defendants' Motions to Dismiss and/or to Sever [Docket Nos. 21, 26, 30, 34, 39, 46, 65, 71 and 81]. The motions brought by the following municipalities are granted because Engebretson's claims against them are time-barred by the four-year statute of limitations: Hennepin County [Docket No. 21]; St. Louis County [Docket No. 30]; the City of St. Paul [Docket No. 39]; the City of Duluth [Docket No. 46]; and Ramsey County [Docket No. 81]. For the reasons discussed below, the motions brought by the following municipalities are granted in part and denied in part: the City of Minneapolis [Docket No. 34]; Biwabik County, et al. ("Biwabik County") [Docket No. 65] and Aitkin County, et al. ("Aitkin County") [Docket No. 71]. The Commissioners' Motion to Dismiss is [Docket No. 26] granted.[1]

## II. BACKGROUND

Engebretson alleges that more than 40 specific Defendants, 50 unknown entities and 500 John Does unlawfully accessed her personal driver's license information more than 200 times between 2003 and 2012. Am. Compl. [Docket No. 9] ¶¶ 1-7. Engebretson worked as a 911 dispatcher for the Pine County Sheriff's Office from 1997-2009. Id. ¶ 60. In 2006, Engebretson was hired as a police officer at North Branch Police Department. Id. ¶ 61-62.[2] In early 2008, Engebretson filed a sexual harassment and retaliation claim against the North Branch Chief of Police. Id. ¶ 65. The Police Chief allegedly told many of his colleagues about Engebretson's claims. Id. ¶ 66. Formal charges were mailed to the Police Chief in February 2009.

---

[1] Pursuant to the parties' stipulation, the Commissioners waived oral argument and no appearance was made on their behalf at the hearing. Stip. Waive Oral Arg. [Docket No. 29].

[2] From 2006-2009 Engebretson worked part-time as a 911 dispatcher. She currently serves full-time as a North Branch police officer. Am. Compl. [Docket No. 9] ¶¶ 62-63.

Engelbretson prevailed in her suit against the Police Chief. On November 10, 2010, a newspaper article about Engebretson's successful suit against the Chief of Police was published. Id. ¶¶ 68-69.

**A. Minnesota's Drivers' Motor Vehicle ("DMV") Records Database**

The Driver and Vehicle Services Division of the Minnesota Department of Public Safety ("DPS") maintains a password protected database of Minnesota drivers' motor vehicle records ("DVS database"). The database includes each licensed driver's name, date of birth, driver's license number, address, photograph, weight, height, eye color, social security number, and some limited health and disability information. Id. ¶¶ 72-75. Law enforcement personnel and other state agency employees have access to the DVS database through a DVS website or a system operated by the Bureau of Criminal Apprehension. Each state employee who is authorized access is issued a password allowing entry to the DVS database.

**B. The DPPA**

The DPPA prohibits "any person" from "knowingly . . . obtain[ing] or disclos[ing] personal information, from a motor vehicle record, for any use not permitted under Section 2721(b) of this title." 18 U.S.C. § 2722. As defined by the Act, "personal information" means basic identification information including name, photograph, address, social security number, and driver's license number. See id. § 2725(3). The Act lists numerous permitted uses, including "use by any government agency, including any court or law enforcement agency, in carrying out its functions." Id. § 2721(b)(1).

### III. DISCUSSION

**A. Statute of Limitations**

DPPA claims are subject to a four-year statute of limitations. 28 U.S.C. § 1658(a). This

Court has repeatedly held that the occurrence rule triggers the statute of limitations in DPPA cases.[3]  See, eg., Roschen v. Wabasha Cnty, No. 13-2490, 2014 U.S. Dist. LEXIS 87005, *11 (D. Minn. June 26, 2014); Heglund v. Aiken Cnty, No. 14-296, 2014 U.S. Dist. LEXIS 99117, *9 (D. Minn. July 22, 2014).  In this case, Engebretson filed her original Complaint on May 7, 2014.  Compl. [Docket No. 1].  Thus, all alleged unlawful accesses (or "look-ups") that occurred prior to May 7, 2010 are time-barred.  The following municipalities are not alleged to have accessed Engebretson's personal data at any time after May 7, 2010: St. Louis County, City of St. Paul, City of Duluth, Ramsey County and Hennepin County.  See Am. Compl., Ex. A.  Engebretson's claims against the remaining municipal entities (Aitkin County, Biwabik County, and the City of Minneapolis) include look-ups that occurred prior to and after May 7, 2010.  All look-ups that are alleged to have occurred more than four years prior to the filing of Engebretson's Complaint are dismissed without further analysis.

**B.  Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  However, the factual allegations must "raise a right to relief above the speculative level," and push claims "across the

---

[3] Under the occurrence rule, the cause of action accrues and the statute of limitations begins to run when the injury occurs.  Gabelli v. S.E.C., 133 S. Ct. 1216, 1220 (2013).  In contrast, under the discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation."  Comcast of Ill. X v. Multi-Vision Elecs., Inc., 491 F.3d 938, 944 (8th Cir. 2007).

line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, the complaint must establish more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. In doing so, the court must draw reasonable inferences in the plaintiff's favor, but it need not make unreasonable inferences or accept unrealistic assertions. See Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010).

**C. Engebretson's Claims Against the Commissioners Fail**

Engebretson alleges that misuse of DPS data was well known to Commissioners Campion and Dohman and that they failed to reasonably protect her private information. Am. Compl. ¶¶ 460-69 and 473. However, "[t]o be liable under the DPPA, the Defendants themselves must have acted with an impermissible purpose." Kampschroer v. Anoka Cnty, Case No. 13-2512, 2014 U.S. Dist. LEXIS 90830 (D. Minn. July 3, 2014) (listing cases holding the same). Engebretson does not allege that the Commissioners knowingly obtained, disclosed, or used her personal information from the DVS Database for a purpose not permitted. All claims alleged against the Commissioners are therefore dismissed.

**D. Remaining Claims**

Engebretson's remaining claims include: 13 look-ups by Aitkin County; 11 look-ups by Biwabik County; and three look-ups by the City of Minneapolis. Am. Compl., Ex. 2. Defendants argue that Engebretson has not pled sufficient facts to establish that the remaining look-ups were completed without a permitted purpose under the DPPA. Engebretson argues that, at a minimum, she has established the plausibility that the November 10 - 17, 2010 look-ups

5

were unlawful.

As discussed in previous DPPA cases, Congress enacted the DPPA as part of legislation designed to prevent stalking, harassment, and related crimes.  See Margan v. Niles, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) (citations omitted).  The Act includes an exception that allows law enforcement to disseminate personal information "for the purpose of deterring or preventing crime or other legitimate law enforcement functions." Senne v. Vill. of Palatine, Ill., 695 F.3d 597, 607-08 (7th Cir. 2012) (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Thomas Harken)).  In short, the legislative history recognizes law enforcement's "legitimate need for information contained in state records and the authority to use that information to effectuate the purposes identified in the Act without fear of liability." Id. at 608.  It is the retrieval of a citizen's personal information without a permitted purpose which constitutes a DPPA violation.

The critical question in this case is whether Engebretson has alleged sufficient facts to plausibly establish that any of the look-ups were unlawful.  Courts have dismissed DPPA cases where the plaintiff has not alleged a "connection or interaction between an identifiable law enforcement officer and the plaintiff, from which the asserted impropriety of the officer's retrieval of the plaintiff's data can be plausibly inferred." Ray v. Anoka Cnty, No. 14-539, 2014 U.S. Dist. LEXIS 75792, at *13 (D. Minn. June 4, 2014) (Magnuson, J.); see also Potocnik v. Anoka Cnty., No. 13-1103, 2014 U.S. Dist. LEXIS 21845 (D. Minn. Feb. 21, 2014) (Doty, J.) (dismissing complaint where the plaintiff "asks the court to speculate and conclude—solely from the number of times defendants allegedly accessed the record—that the purposes of law enforcement personnel were impermissible"); Bass v. Anoka Cnty., No. 13-860, 2014 U.S. Dist. LEXIS 21846 (D. Minn. Feb. 21, 2014) (Doty, J.) (same); Mitchell v. Aitkin Cnty., No. 13-2167,

2014 U.S. Dist. LEXIS 27089 (D. Minn. Mar. 4, 2014) (Ericksen, J.) (dismissing claims based on the plaintiff's status as a television personality, with its attendant publicity, because status did not address the fundamental question in DPPA cases: "the impropriety of the data retrieval by each individual officer"); Kendall v. Anoka Cnty, No. 14-247, 2014 U.S. Dist. LEXIS 111781, at *4 (D. Minn. August 13, 2014) (Doty, J.) (holding that frequent access of records, access at odd hours and an unblemished criminal record was insufficient to establish plausibility of unlawful look-ups).

Conversely, claims of unlawful look-ups have survived a Rule 12 motion where plaintiff's allegations included that (1) the look-ups were made by name, not license plate number; (2) plaintiff's personal information was accessed hundreds of times; (3) misuse of the database by defendants was acknowledged in a Minnesota state report; (4) plaintiff was well known in the counties with the most look-ups; and (5) many searches were done at three or four o'clock in the morning. See Mallak v. Aitkin Cnty, No. 13-2119, 2014 U.S. Dist. LEXIS 43349, *28 (D. Minn. Mar. 31, 2014) (Frank, J.); see also Heglund v. Aitkin Cnty., No. 14-296, 2014 U.S. Dist. LEXIS 99117, at *7 (D. Minn. July 22, 2014) (Montgomery, J.) (finding a plausible claim where plaintiff was a law enforcement officer in the county with the most retrievals and she had been harassed by her ex-husband—who was also a law enforcement officer with access to the database—during the years when retrievals were made); Smythe v. City of Onamia, No. 12-03149, 2013 U.S. Dist. LEXIS 78948, at *6 (D. Minn. June 5, 2013) (Montgomery, J.) (concluding that plaintiff plausibly stated a DPPA claim because he alleged in detail a "long and contentious history" between himself and the person solely responsible for accessing his data).

The facts of this case support the conclusion that Engebretson has plausibly alleged DPPA violations for some, but not all, of the remaining look-ups. Engebretson's driver's license

information has been accessed hundreds of times since 2005. As discussed above, many of those look-ups are time-barred by the four-year statute of limitations. Many others that fall within the statute of limitations period lack a plausible connection to an individual officer or group of officers that allow the Court to find plausible impropriety. However, Engebretson has sufficiently established the plausible impropriety of 18 look-ups by seven entities that occurred between November 10 and 17, 2010, the week following the publication of a newspaper article about her lawsuit against the North Branch Police Chief.[4] This cluster of look-ups occurred in a scattering of governmental units across the state. Engebretson avers that she did not travel to the varied geographically areas of Minnesota where the look-ups occurred during the week of November 10 - 17, 2010. Id. ¶ 301. Engebretson also notes that her information was accessed by name rather than license plate or driver's license number. Am. Compl. ¶ 391. The publication of a newspaper article about Engebretson's lawsuit against the North Branch Police Chief provides a sufficient causal nexus to conclude that these 18 look-ups were plausibly lacking in permitted purpose. Collectively, these facts push Engebretson's claim related to these 18 look-ups from merely possible to plausible.

---

[4] Engebretson alleges that 19 look-ups occurred during the week of November 10-17, 2010, but the Court counts 18 only:
- November 10, 2010: one look-up by Otter Tail County; four look-ups by the City of Bloomington; one look-up by the City of Minneapolis and six look-ups by the Department of Natural Resources ("DNR").
- November 11, 2010: one look-up by Otter Tail County; one look-up by Mounds View and two look-ups by the City of Minneapolis.
- November 12, 2010: one look-up by the City of Coon Rapids
- November 17, 2010: one look-up by Pine County.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Hennepin County's Motion to Dismiss [Docket No. 21] is **GRANTED**.

2. The Commissioners' Motion to Dismiss [Docket No. 26] is **GRANTED**.

3. St. Louis County's Motion to Dismiss [Docket No. 30] is **GRANTED**.

4. The City of Minneapolis's Motion to Dismiss [Docket No. 34] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    A. To the extent the motion seeks to dismiss the November 10, 2010 and November 11, 2010 look-ups (3 total), the motion is **DENIED**.

    B. In all other respects, the motion is **GRANTED**.

5. The City of St. Paul's Motion to Dismiss [Docket No. 39] is **GRANTED**.

6. The City of Duluth's Motion to Dismiss [Docket No. 46] is **GRANTED**.

7. The City of Biwabik, City of Bloomington, City of Breitung, City of Brooklyn Park, City of Burnsville, City of Cambridge, City of Coon Rapids, Dakota Communications Center, City of Eveleth, City of Floodwood, City of Golden Valley, City of Inver Grove Heights, City of Moorhead, City of Moose Lake, City of Mounds View, City of Oakdale, City of Roseville, City of Sartell, City of St. James, City of Staples, City of Virginia, City of White Bear Lake, and City of Isanti's Motion to Dismiss [Docket No. 65] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    A. To the extent the motion seeks to dismiss the November 10, 2010, November 11, 2010, and November 12, 2010 look-ups (6 total), the motion is **DENIED**.

    B. In all other respects, the motion is **GRANTED**.

8. Aitkin County, Big Stone County, Dodge County, Isanti County, Kanabec County, Lake County, Otter Tail County, Pine County, Washington County, and Wright County's Motion to Dismiss [Docket No. 71] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    A. To the extent the motion seeks to dismiss the November 10, 2010 and November 11, 2010 and November 17, 2010 look-ups (3 total), the motion

        is **DENIED**.

      B.      In all other respects, the motion is **GRANTED**.

9.      Ramsey County's Motion to Dismiss [Docket No. 81] is **GRANTED**.[5]

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 19, 2014.

---

[5] The DNR is not a named Defendant in this case.