# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kelly Marie Engebretson,

        Plaintiff,

        v.

Aitkin County, et al.,

        Defendants.

**MEMORANDUM
OPINION AND ORDER**
Civil No. 14-1435 ADM/FLN

---

Jonathan A. Strauss, Esq., Lorenz F. Fett, Esq., and Sonia Miller-Van Oort, Esq., Sapientia Law Group PLLC, Minneapolis, MN, on behalf of Plaintiff.

Stephanie A. Angolkar, Esq., Jon K. Iverson, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of Defendants City of Bloomington, City of Coon Rapids, City of Mounds View, Michael Sternquist, Keith Czarnecki, and Thomas Williams.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on the Defendants City of Bloomington, City of Coon Rapids, City of Mounds View, Michael Sternquist, Keith Czarnecki, and Thomas Williams' ("Defendants") Motion for Summary Judgment [Docket No. 157]. Plaintiff Kelly Marie Engebretson opposes the Motion. For the reasons discussed below, Defendants' Motion is granted in part and denied in part.[1]

## II. BACKGROUND

This case arises under the Driver's Privacy Protection Act ("DPPA" or the "Act"), 18 U.S.C. § 2721 et seq. Engebretson alleges that numerous known and unknown law enforcement

---

[1] Plaintiff and Defendants filed a stipulation waiving oral argument and requesting a ruling on the basis of the parties' written submissions. See Stip. Waive Oral Arg. [Docket No. 168]. Pursuant to this stipulation, no hearing was held on this matter. See Order Granting Stip. Waive Oral Arg. [Docket No. 169].

personnel and public employees illegally accessed her personal driver's license information

nearly 200 times between 2003 and 2012.  Second Am. Compl. [Docket No. 131] ¶ 2.

Engebretson seeks to hold the individual defendants directly liable, and the entity defendants

directly and vicariously liable for the alleged DPPA violations.  Id. ¶¶ 503–12.

## A.  The DPPA

The DPPA allows a civil suit to be brought against any "person who knowingly obtains,

discloses, or uses personal information, from a motor vehicle record, for a purpose not permitted

under this chapter . . . ."  18 U.S.C. § 2724(a).  A "person" who may be sued under this section

"means an individual, organization, or entity, but does not include a State or agency thereof."  18

U.S.C. § 2725(2).[2]  "[P]ersonal information" means basic identification information including

name, photograph, address, social security number, and driver's license number.  18 U.S.C. §

2725(3).

The Act lists fourteen permissible purposes for obtaining or disclosing personal

information.  The first is:  "For use by any government agency, including any court or law

enforcement agency, in carrying out its functions, or any private person or entity acting on behalf

of a Federal, State, or local agency in carrying out its functions."  18 U.S.C. § 2721(b)(1).

## B.  Engebretson

Engebretson worked as a 911 dispatcher and jailer for the Pine County Sheriff's Office

from 1997 to 2009.  Angolkar Aff. [Docket No. 160] Ex. 1 ("Engebretson Dep.") at 29–30.  In

---

[2] Although a state or a state agency cannot be sued under the DPPA, "[a]ny State department of motor vehicles that has a policy or practice of substantial noncompliance with [the DPPA] shall be subject to a civil penalty imposed by the Attorney General of not more than $5,000 a day for each day of substantial noncompliance."  18 U.S.C. § 2723(b).

2006, Engebretson also began working as a police officer for the North Branch Police Department.  Id. at 30.  She continued to work part time for Pine County until 2009.  Id.

Through her positions as a dispatcher and police officer, Engebretson had access to the password-protected Minnesota Driver and Vehicle Services Division database (the "DVS Database"), the location of the motor vehicle records for Minnesota drivers.  Id. at 79, 81. Engebretson admits that she accessed the records of family members, coworkers, and other acquaintances without their consent, and that those access were for personal reasons and not for a known law enforcement purpose.  Id. at 82–84, 86–92.

In early 2008, Engebretson filed a sexual harassment claim against the North Branch Chief of Police ("Police Chief").  Id. at 60.  Engebretson contends that after the sexual harassment suit was filed, the Police Chief began retaliating against her.  Id. at 64–66.  In 2009, Engebretson filed a retaliation claim with the Minnesota Department of Human Rights against the Police Chief and the City of North Branch.  Id. at 67–68.  She settled her retaliation claim in the fall of 2010 for $60,000.  Id. at 69–70.  The settlement was publicized in an article published online on November 10, 2010 and in a local newspaper on November 11, 2010.  Id. at 70; Strauss Aff. [Docket No. 164] ¶ 5, Ex. A.

**C.  DPS Audit**

In June 2013, Engebretson requested an audit from the Minnesota Department of Public Safety ("DPS") showing the number of times her driver's license information had been accessed through the DVS Database.  Strauss Aff. Ex. C at ENGEBRETSON 000002.  The audit provided by DPS revealed that Engebretson's personal information had been accessed nearly 200 times between 2003 and 2012.  Id. ¶ 8, Ex. D.

**D. Procedural History**

On May 7, 2014, Engebretson filed this lawsuit alleging violations of the DPPA.  The original Complaint named as defendants more than 40 known Defendants, 50 unknown entities, and 500 John Does.  See Compl. [Docket No. 1].  Engebretson named the Doe defendants because at the time the original Complaint was filed the DPS refused to identify the names of the individuals who had accessed her driver's license information.  Pl.'s Mem. Opp'n Mot. Summ. J. [Docket No. 163] at 9.

On November 19, 2014, this Court issued an Order [Docket No. 94], amended on January 15, 2015 [Docket No. 102], dismissing on statute of limitations grounds Engebretson's claims against multiple cities and counties for accesses or "lookups" that occurred before May 7, 2010, which was four years before the filing of the Complaint.  See Engebretson v. Aitkin Cty., No. 14-1435, 2015 WL 224734, at *2 (D. Minn. Jan. 15, 2015).  As to the remaining accesses, the Court concluded that Engebretson had plausibly alleged DPPA violations for some, but not all, of the lookups.  The violations found to have been plausibly alleged were the accesses that occurred during the week of November 10–17, 2010.  Because those lookups closely corresponded in time to the news coverage of Engebretson's lawsuit against the Police Chief, the accesses were plausibly due to curiosity rather than a permissible purpose.  Id. at *4.

Following that ruling, the parties held a Rule 26(f) conference during which Engebretson's counsel advised Defendants' counsel of Engebretson's intention to amend her Complaint to add individual defendants after their identities had been disclosed.  Strauss Aff. ¶ 4. In January 2015, the parties submitted a joint Rule 26(f) Report [Docket No. 101] stating that "[t]he parties anticipate the addition of named law-enforcement personnel, currently sued as

John and Jane Does, after First Phase Discovery reveals their identities." Rule 26(f) Report at 4.
On March 20, 2015, Engebretson served a subpoena on DPS to obtain an audit identifying the
names of the individuals who had accessed her motor vehicle records.  Strauss Aff. ¶ 11.  DPS
produced the audit on May 6, 2015.  Id. ¶ 12.

On October 9, 2015, Engebretson filed a Second Amended Complaint that substituted the
following three law enforcement officers for previously unknown Doe Defendants.  See Second
Am. Compl. ¶¶ 58–59, 63.

### 1. Bloomington Sergeant Thomas Williams

Williams accessed Engebretson's driver's license information a single occasion[3] at 10:29
p.m. on November 10, 2010, the same day that the newspaper article appeared online.  See
Strauss Aff. Ex. E.  Williams was one of eight people from five unrelated government entities
who accessed Engebretson's information during a 12-hour window from 10:00 p.m. on
November 10 to 10:00 a.m. on November 11, 2010.  See id. Ex. D at 6–7.  Williams does not
know Engebretson and does not recall accessing her driver's license information or the reason
for doing so.  Angolkar Aff. Ex. 3 ("Williams Dep.") 17, 21, 26.  Williams also does not recall
seeing or reading a newspaper article about Engebretson's retaliation claim.  Id. at 17–18.

### 2. Mounds View Officer Keith Czarnecki

Czarnecki accessed Engebretson's driver's license information one time at 7:30 a.m. on
November 11, 2010, while on duty.  See Strauss Aff. Ex. E; Angolkar Aff. Ex. 4 ("Czarnecki

---

[3] Engebretson alleges Williams accessed her information four times.  Second Am. Compl.
¶ 112.  However, the four accesses occurred over a two-minute time period.  See Strauss Aff. Ex.
E.  The Eighth Circuit has recently clarified that "sequential accesses occurring within a several-
minute time span should be considered one obtainment rather than several."  Tichich v. City of
Bloomington, —F.3d—, 2016 WL 4547350, at *2 (8th Cir. Sept. 1, 2016).

Dep.") at 60, 63.  His access was also made during the 12-hour time period referenced above.

See Strauss Aff. Ex. D at 6–7.  Czarnecki does not know Engebretson.  Czarnecki Dep. at 55.

He looked up Engebretson's information after seeing the newspaper article about her retaliation

settlement because he was interested to see who the article was about.  Id. at 57, 63–64, 66.

### 3.  Coon Rapids Officer Michael Sternquist

Sternquist accessed Engebretson's driver's license information a single time at 6:05 a.m.

on November 12, 2010.  See Strauss Aff. Ex. E.  During the 24-hour time period preceding

Sternquist's lookup, four other users from three unrelated agencies had also accessed

Engebretson's data.  See id. Ex. D at 7.  Sternquist looked up Engebretson's information after

reading the November 11 newspaper article about the settlement of her retaliation claim.

Angolkar Aff. Ex. 5 ("Sternquist Dep.") at 36.  He was curious to see if she was related to a

family friend with a similar last name.  Id. at 10–11, 31–32.  Sternquist admits the look-up was

not related to official police business.  Id. at 25–26.  He also admits to looking up family, sports

figures, and local news anchors in the DVS Database for reasons unrelated to police business.

Id. at 26–27.

## E.  Present Motion

Defendants Williams, Czarnecki, and Sternquist (collectively, the "Individual

Defendants"), along with their respective employers City of Bloomington, City of Mounds View,

and City of Coon Rapids, (collectively, the "Cities" or "City Defendants") now move for

summary judgment, arguing that:  (1) the statute of limitations bars Engebretson's claims against

the Individual Defendants because the Second Amended Complaint does not relate back to the

date of the Original Complaint; (2) Engebretson's speculation about why the Individual

Defendants accessed her information does not establish a DPPA violation; (3) Sergeant Williams

is entitled to qualified immunity; (4) the Cities are not directly or vicariously liable under the

DPPA; (5) Engebretson's claims are barred by the doctrines of unclean hands and *in pari delicto*;

(6) Engebretson has suffered no injury and thus lacks Article III standing to pursue her claims;

and (7) Engebretson's claims are barred by the rule of lenity.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary

judgment, the Court views the evidence in the light most favorable to the nonmoving party and

draws all justifiable inferences in its favor.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir.

1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate

on the record the existence of specific facts which create a genuine issue for trial."  Krenik v.

Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted).  To withstand a

motion for summary judgment, a plaintiff "must substantiate his allegations with sufficient

probative evidence that would permit a finding in his favor on more than mere speculation,

conjecture, or fantasy.  Moody v. St. Charles Cty., 23 F.3d 1410, 1412 (8th Cir. 1994) (internal

quotation and alterations omitted).

**B. Standing**

Defendants argue that Engebretson lacks Article III standing to assert a DPPA claim because she suffered no injury or damages from the mere viewing of her information by a police officer.  "Article III standing is a threshold question in every federal court case."  <u>United States v. One Lincoln Navigator 1998</u>, 328 F.3d 1011, 1013 (8th Cir. 2003).  "[T]he 'irreducible constitutional minimum' of standing consists of three elements":  (1) the plaintiff has suffered an injury in fact, (2) the injury is fairly traceable to the defendant's challenged conduct, and (3) the injury is likely to be redressed by a favorable decision.  <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).

The first element, an injury in fact, requires a showing that the plaintiff has suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  <u>Id.</u> at 1548 (quoting <u>Lujan</u>, 504 U.S. at 560).  A concrete injury "must actually exist," meaning the injury must be "real" and "not abstract."  <u>Id.</u>  However, an injury need not be tangible to be concrete.  <u>Id.</u> at 1549.  In determining whether an intangible harm constitutes a concrete injury, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  <u>Id.</u>

Defendants argue that Engebretson lacks standing because she has alleged only a statutory violation and not a concrete injury.  Defendants contend that a DPPA violation, by itself, does not constitute an injury in fact because the mere obtainment of a plaintiff's information does not necessarily cause that plaintiff to suffer a real, rather than abstract, injury.

8

A similar argument was recently addressed in two DPPA cases in this district.  See

Potocnik v. Carlson, No. 13–2093, 2016 WL 3919950, at *2–3 (D. Minn. July 15, 2016);

Krekelberg v. Anoka Cty., No. 13–3562, 2016 WL 4443156, at *3 (D. Minn. Aug. 19, 2016).  In

Potocnik, the district court held that an alleged DPPA violation constitutes a concrete injury

because "the type of harm at issue—the viewing of private information without lawful

authority—has a close relationship to invasion of the right to privacy, a harm that has long

provided a basis for tort actions in the English and American courts."  Potocnik, 2016 WL

3919950, at *3.  In so holding, the court noted that the Supreme Court does not require that the

harm caused by a statutory violation be identical to the type of harm that would give rise to a

recovery under common law, only that the harm bear a "close relationship" to a harm that has

traditionally served as a basis for suit in English and American courts.  Id. at *3.  This is because

"Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries

that were previously inadequate in law.'"  Id. (quoting Spokeo, 136 S. Ct. at 1549) (alterations in

original).  The district court further noted that the plaintiff had alleged that she suffered

emotional distress as a result of the alleged DPPA violations.  Id.  The analysis in Potocnik was

adopted in Krekelberg, which similarly held that the injury-in-fact requirement of standing is

satisfied where a plaintiff alleges that her private information was accessed in violation of the

DPPA and that she experienced emotional distress as a result.  Krekelberg, 2016 WL 4443156, at

*3.

This Court finds the reasoning in Potocnik persuasive and will apply it here.  The harm

caused by Defendants' alleged viewing of Engebretson's private information without a lawful

purpose is sufficiently concrete to satisfy the injury in fact element for Article III standing.

Additionally, Engebretson has averred that she was upset and suffered emotional distress as a result of Defendants' allegedly unlawful accesses.  <u>See</u> Engebretson Dep. at 78 (stating she did not feel "safe anymore").  Therefore, Defendants' request for summary judgment on the basis of standing is denied.

## C.  Relation Back Under Fed. R. Civ. P. 15(c)(1)(C)

Defendants argue that the DPPA claims against the Individual Defendants are time-barred because the Second Amended Complaint does not relate back to the date of the Original Complaint.  DPPA claims are subject to the four-year statute of limitations in 28 U.S.C. § 1658(a), which begins to run when the alleged violations occurred.  <u>McDonough v. Anoka Cty.</u>, 799 F.3d 931, 939–43 (8th Cir. 2015).  There is no dispute that the Individual Defendants' allegedly illegal conduct at issue occurred in November of 2010.  The Second Amended Complaint was filed more than four years later, on October 9, 2015.  Therefore, if the Second Amended Complaint does not relate back to the date of the original Complaint, the claims against the Individual Defendants are time-barred.

Federal Rule of Civil Procedure 15(c) provides than an amended pleading will relate back to the date of an original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have
> been brought against it, but for a mistake concerning the
> proper party's identity.

Fed. R. Civ. P. 15(c)(1).  The purpose of relation back is "to balance the interests of the

defendant protected by the statue of limitations with the preference . . . for resolving disputes on

their merits."  Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550 (2010).

The parties dispute whether the requirement of Rule 15(c)(1)(C)(ii)—that the added party

"knew or should have known that the action would have been brought against it, but for a

mistake concerning the proper party's identity"—has been satisfied.  Defendants argue that

naming a Doe defendant is not a "mistake" as to the proper party's identity.  Rather, naming a

Doe defendant is a representation by the plaintiff that it lacks knowledge of the defendant's

name.  Engebretson disagrees, arguing that Rule 15(c)(1)(C) is satisfied where a defendant knew

or should have known that they would eventually be added as a named defendant in a case.

In interpreting what constitutes a mistake under Rule 15(c)(1)(C), the United States

Supreme Court has stated:

> A mistake is "[a]n error, misconception, or misunderstanding; an
> erroneous belief."  Black's Law Dictionary 1092 (9th ed.2009); see
> also Webster's Third New International Dictionary 1446 (2002)
> (defining "mistake" as "a misunderstanding of the meaning or
> implication of something"; "a wrong action or statement proceeding
> from faulty judgment, inadequate knowledge, or inattention"; "an
> erroneous belief"; or "a state of mind not in accordance with the
> facts").

Id. at 548-49.  Applying this definition, a plaintiff's naming of a Doe defendant is not a mistake

because a plaintiff's decision to name a Doe defendant is not an error, misconception,

misunderstanding, erroneous belief, wrong action, or wrong statement.  Rather, a plaintiff names

a Doe defendant because the plaintiff does not yet know the identity of the defendant; it is a

placeholder.

The Eighth Circuit has not directly ruled whether an amended complaint identifying a defendant by name will relate back to an earlier complaint filed against a Doe defendant. However, the vast majority of Circuit Courts to have considered this issue hold that a plaintiff's lack of knowledge of the proper party to be sued is not a "mistake concerning the party's identity" under Rule 15(c) and thus relation back is not permitted. See Heglund v. Aitkin Cty., No. 14–296, 2016 WL 3093381, at *4 (D. Minn. June 1, 2016) (citing cases from Second, Fourth, Fifth, Sixth, Seventh and Tenth Circuits). Additionally, the cases in this district that have addressed this issue in the DPPA context have followed the majority rule. See id. at *4–6; Krekelberg, 2016 WL 4443156, at *4–5; Potocnik, 2016 WL 3919950, at *3–5.

The Third Circuit is the only Circuit Court to hold that the naming of a Doe defendant satisfies the "but for a mistake" requirement of Rule 15(c). See Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir. 1977). However, Varlack did not include any discussion of why the lack of knowledge as to the proper defendant constitutes a mistake concerning the party's identity. Additionally, Varlack was decided before the 1991 Advisory Committee Note which clarifies that under Rule 15(c), "a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification." Fed. R. Civ. P. 15(c)(3) advisory committee's note to 1991 amendment (emphasis added). The naming of a Doe defendant based on the lack of knowledge of the defendant's identity is not a misnomer or misidentification.

Quoting the Supreme Court's decision in Krupski, Engebretson argues that relation back should apply because "relation back under Rule 15(c)(1)(C) depends on what *the party to be added* knew or should have known, not on the amending party's knowledge." Krupski, 560 U.S.

at 541 (emphasis in original).  Engebretson contends the Individual Defendants knew or should have known of their eventual addition to the case because their counsel also represents the City Defendants, and counsel knew at the time the Original Complaint was filed that individual employees would be added to the suit.  Krupski is distinguishable, however, because the plaintiff in Krupski initially sued the wrong party and amended her complaint to name the proper defendant.  Id. at 541–44.  Here, Engebretson's amended pleading does not correct a mistake of fact.  Rather, the Second Amended Complaint seeks to add information that was lacking at the time the Original Complaint was filed.  Thus, regardless of what the Individual Defendants should have known, the "but for a mistake" requirement of Rule 15(c)(1)(ii) remains unsatisfied. See Scott v. Vill. of Spring Valley, 577 F. App'x 81, 82–83 (2d Cir. 2014) (denying relation back in Doe cases because, unlike Krupski, plaintiff's addition of new individual defendants did not correct a mistake); Smith v. City of Akron, 476 F. App'x 67, 69 (6th Cir. 2012) (same); Potocnik, 2016 WL at 3919950, at *5 (same); Krekelberg, 2016 WL 4443156, at *5 (same). Additionally, Engebretson has adduced no evidence suggesting that the Individual Defendants had actual or constructive notice of Engebretson's claims or that they were among the 500 John Does from whom Engebretson sought relief.

Engebretson also argues that even if the Second Amended Complaint does not relate back, the doctrine of equitable estoppel should prevent the statute of limitations from running. Engebretson quotes Schrader v. Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1013 (8th Cir. 1991) for the assertion that "[a] defendant's actions making it difficult for the plaintiff to learn the intended defendant's proper name until after the limitation period expired" justifies the application of equitable estoppel.  As explained in the Potocnik decision from this district,

however, <u>Schrader</u> involved a factual context suggesting the defendant had actively misled the plaintiff concerning the identity of the proper defendant.  <u>See</u> <u>Potocnik</u>, 2016 WL 3919950, at *5 (citing <u>Schrader</u>, 952 F.2d at 1013).  Here, Defendants have not engaged in misleading conduct concerning the identity of the appropriate defendants.  Thus, equitable estoppel does not apply.

Because Engebretson's naming "John Does" was not a mistake concerning the proper party's identity, Rule 15(c) is not satisfied and the Amended Complaint does not relate back to the original Complaint.  As a result, the DPPA claims against the Individual Defendants are time-barred.  Summary judgment is granted on all claims against the Individual Defendants.

## D.  City Defendant Liability

### 1.  Direct Liability

Engebretson contends the Cities are directly liable under the DPPA because the Cities provided their employees with access to the DVS Database and chose not to monitor their employees' use of the database, thus allowing them to access the DVS Database for purposes not permitted under the DPPA.

To establish a violation of the DPPA, a plaintiff must show that a defendant (1) knowingly (2) obtained, disclosed or used personal information, (3) from a motor vehicle record, (4) for a purpose not permitted.  <u>McDonough</u>, 799 F.3d at 945.  Thus, to violate the DPPA, a defendant itself must have acted with an impermissible purpose; it is not enough that the defendant discloses information to one who subsequently uses it for an impermissible purpose. <u>Potocnik</u>, 2016 WL 3919950, at *6 (holding county defendant not directly liable under DPPA where county provided DVS access to employees for permissible law-enforcement purpose); <u>Weitgenant v. Patten</u>, No. 14–255, 2016 WL 1449572, at *4 (D. Minn. Apr. 12, 2016) (same);

Jessen v. Blue Earth Cty., No. 14-1065, 2014 WL 5106870, at *4 (D. Minn. Oct. 10, 2014) (same).

Here, the record lacks evidence that any of the Cities "knowingly" gave the Individual Defendants access to the DVS Database "for a purpose not permitted" under the DPPA. 18 U.S.C. § 2724(a). There is no evidence that the Cities provided their law enforcement officers with access to the database for any reason other than the permissible purpose of carrying out their law enforcement duties. Additionally Engebretson's argument that the Cities failed to monitor their employees' use of the database sounds in negligence, which falls short of the "knowingly" requirement under the statute.

Summary judgment is granted to Defendants on Engebretson's direct liability claims against the Cities.

### 2. Vicarious Liability

Engebretson also claims the Cities are vicariously liable for the Individual Defendants' alleged DPPA violations. Engebretson contends vicarious liability is appropriate under the federal doctrine of apparent authority. The Cities argue that vicarious liability for DPPA violations has been rejected in this district and is inconsistent with the intent behind the DPPA's statutory scheme.[4]

---

[4] The parties have not raised the issue of whether an employer can be held vicariously liable for the wrongful conduct of an employee when, as here, the claim against the employee is barred by the statute of limitations. Courts are split on this issue. See generally Byrd v. J Rayl Transport, Inc., 106 F. Supp. 3d 999, 1001 (D. Minn. 2015) (discussing cases). Several cases, including one from this district, have held that merely because a plaintiff cannot recover from an employee does not preclude the possibility that liability may exist and may be imputed to the employer. See id. at 1001–02 (holding employer may be vicariously liable for employee's negligence even though claim against employee would be barred for statute of limitations and jurisdictional reasons). Because the parties have not raised the issue, the Court will not consider

The DPPA is silent on the issue of vicarious liability. No Circuit Court has addressed whether vicarious liability applies to DPPA claims. Courts within this district have reached differing conclusions on the issue. See, e.g., Jessen, 2014 WL 5106870, at *4 n.4 (holding vicarious liability does not apply to DPPA because statute's plain language requires that defendant itself must have acted to be liable); Weitgenant, 2016 WL 1449572, at *7 (declining to apply vicarious liability based on the circumstances of the case); Potocnik, 2016 WL 3919950, at *7 (holding vicarious liability applies to DPPA cases because no conflict exists between the availability of vicarious liability and the purposes of the DPPA). At least three district court decisions from other federal jurisdictions have held that the DPPA imposes vicarious liability upon municipalities for the actions of their employees. See Margan v. Niles, 250 F. Supp. 2d 63, 72–76 (N.D.N.Y. 2003); Schierts v. City of Brookfield, 868 F. Supp. 2d 818, 821–22 (E.D. Wis. 2012); Menghi v. Hart, 745 F. Supp. 2d 89, 99 (E.D.N.Y. 2010).

The district courts that have applied vicarious liability to municipalities under the DPPA relied on the general principle that "[w]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." See Margan, 250 F. Supp. 2d at 74 (quoting Meyer v. Holley, 537 U.S. 280, 285 (2003)); Schierts, 868 F. Supp. 2d at 822 (same). Under this principle, traditional vicarious liability rules will be applied if they are consistent with the federal statute's provisions and Congress' intent. Jones v. Federated Fin'l Reserve Corp., 144 F.3d 961, 965–66 (6th Cir. 1998).

---

whether dismissal of the underlying claims against the Individual Defendants eliminates the vicarious liability claims against the Cities.

Federal tort-related vicarious liability rules include the doctrine of apparent authority, which provides that a principal is liable for the torts of its agents when the agents act with apparent authority.  Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 567 (1982).  In Hydrolevel, the Supreme Court applied the doctrine of apparent authority to antitrust statutes after finding that vicarious liability was consistent with the Congress' intent to encourage competition.  Id. at 570–76.  The Supreme Court reasoned that if an organization is liable for the antitrust violations of its agents acting with apparent authority,

> it is much more likely that similar antitrust violations will not occur in the future.  Pressure will be brought on the organization to see that its agents abide by the law.  Only [the organization] can take systematic steps to make improper conduct on the part of all its agents unlikely, and the possibility of civil liability will inevitably be a powerful incentive for [the organization] to take those steps.

Id. at 572–73 (internal quotations, citation, and alterations omitted).

Courts that have applied vicarious liability to municipalities under the DPPA have analogously reasoned that the municipalities are in the best position to prevent DPPA violations by their employees, and that the threat of vicarious liability encourages municipalities to adopt appropriate policies, procedures, and training to prevent the misuse of motor vehicle data. Margan, 250 F. Supp. 3d at 74–75; Potocnik, 2016 WL 3919950, at *7.

In Weitgenant, this Court considered the issue of vicarious liability for municipalities under the DPPA and concluded that "even if vicarious liability were a viable theory of recovery in this district," the theory did not apply under the circumstances of the case before it, because doing so would upset the balance Congress sought to strike between protecting privacy and allowing government agencies to carry out their functions.  2016 WL 1449572, at *7.  Thus, the Court did not entirely reject the theory of vicarious liability for municipalities under the DPPA,

but declined to apply it under the circumstances of that case.  See id.

Some months after Weitgenant was decided, Judge Schiltz, in Potocnik, addressed whether a city should be vicariously liable for the DPPA violations of its law enforcement officers.  See Potocnik, 2016 WL 3919950, at *6–7.  Vicarious liability was found to be appropriate because "[t]he City is in the best position to take systematic steps to prevent DPPA violations by its employees, and vicarious liability gives it an incentive to do so."  Id. at *7.  Although recognizing the concern over the DPPA's impact on law enforcement functions, Judge Schiltz reasoned that vicarious liability is nevertheless appropriate because "once a law-enforcement officer has exceeded the broad bounds of the government-function exception [under § 2721(b)(1) of the DPPA], shielding his employer from vicarious liability serves no purpose other than to weaken the municipality's incentive to prevent future violations."  Id.  The Court is persuaded by this reasoning and will apply it here.  Thus, the Cities can be held vicariously liable for the Individual Defendants' alleged DPPA violations.

The City Defendants argue that even if vicarious liability applies, the Cities are not liable for unforeseeable accesses made by employees outside the scope of their employment.  However, under the federal rule of apparent authority, liability is premised on the agent's position facilitating the wrongdoing.  Hydrolevel Corp., 456 U.S. at 566.  Thus, an agent acting outside the scope of their employment will be liable if the agent "was aided in accomplishing the tort by the existence of the agency relation."  Restatement (Second) of Agency § 291(2)(d) (1958).  Here, the Individual Defendants' positions as law enforcement officers for the City Defendants facilitated the alleged wrongdoing because they had access to the DVS Database as a result of their positions.  Therefore, vicarious liability applies.

Summary judgment is denied on Engebretson's vicarious liability claims against the Cities.

**E.  Sufficiency of Evidence**

Defendants also argue that even if vicarious liability applies, no DPPA violation has occurred because Engebretson's speculation about the officers' reasons for accessing her record is insufficient to establish that the Individual Defendants lacked a permissible purpose for the accesses.  The Eighth Circuit has repeatedly held that evidence showing suspicious access and timing patterns, which include (1) accesses corresponding with a significant event, and (2) accesses on the same day or within a few hours of accesses by other unrelated entities, suggest that the accesses may have been for an impermissible purpose such as curiosity or a personal interest in the plaintiff.  See Tichich v. City of Bloomington, —F.3d—, 2016 WL 4547350, at *1–2 (8th Cir. Sept. 1, 2016); Mallak v. City of Baxter, 823 F.3d 441, 447 (8th Cir. 2016); McDonough, 799 F.3d at 950.

The evidence here shows suspicious access patterns.  All three of the Individual Defendants accessed Engebretson's private information the day of or day after the news reports of the settlement of her claim against the Police Chief.  Williams' and Czarnecki's accesses occurred during a 12-hour time frame in which eight users from five unrelated entities accessed Engebretson's data.  Sternquist's access was made during a 24-hour time period in which five individuals from four unrelated entities viewed Engebretson's information.  None of the Individual Defendants have offered a permissible purpose for accessing Engebretson's data, and Sternquist admits that his access was made out of curiosity and not for a permissible purpose.  Thus, for each of the three accesses at issue, the evidence establishes a sufficiently suspicious

access pattern to raise a genuine fact issue about whether the access was for a permissible purpose.

**F.  Qualified Immunity**

Defendants argue that even if vicarious liability applies, the City of Bloomington is not liable for Williams' access because he is entitled to qualified immunity.  According to Defendants, "there is no evidence to establish [Williams] did not access Engebretson's record for purposes of carrying out government functions."  Defs.' Mem. Supp. Summ. J. [Docket No. 159] at 16.  "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Mallak, 823 F.3d at 445 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Courts apply a two-step analysis to determine whether an officer is entitled to qualified immunity:  (1) whether the facts alleged or shown by the plaintiff establish a violation of a federal statutory or constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct.  Pearson v. Callahan, 553 U.S. 223, 232 (2009). "When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right."  Bishop v. Glazier, 723 F.3d 957, 961 (8th Cir. 2013).

As to the first prong, Engebretson has produced sufficient evidence to create a genuine issue of fact about whether Williams violated the DPPA.  See Section III.E., above.  Regarding the second prong, the DPPA has been in effect since 1994.  The federal statute unambiguously prohibits a person from accessing and viewing an individual's personal information from a motor vehicle record for a purpose not permitted under the statute.  McDonough, 799 F.3d at 944 ("In

20

the context of the DPPA, the word 'obtain' unambiguously includes access and observation of the data."). Thus, a federal statutory right was clearly established at the time Williams accessed Engebretson's private data in 2010. Williams is not entitled to qualified immunity.

## G. Unclean Hands and *In Pari Delicto*

Defendants argue that Engebretson's claims are barred under the equitable doctrine of unclean hands and *in pari delicto*.

### 1. Unclean Hands

The unclean hands doctrine provides that "he who comes into equity must come with clean hands" as to the matter in which he seeks relief. Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). Defendants contend that Engebretson's own admitted misuse of the DVS Database bars her from recovering damages stemming from Defendants' alleged DPPA violations.

This argument fails for two reasons. First, Defendants waived the affirmative defense of unclean hands by not pleading it in their Answer [Docket No. 132] to the Second Amended Complaint. See Sayre v. Musicland Grp., Inc., 850 F.2d 350, 354 (8th Cir. 1988) "[F]ailure to plead . . . an affirmative defense results in a waiver of that defense."); Fed R. Civ. P. 8(c) (requiring a party to state an affirmative defense when responding to a pleading). Second, "equity does not demand that [plaintiffs] have led blameless lives as to other matters," but only that "they shall have acted fairly and without fraud or deceit as to the controversy in issue." Precision Instrument, 324 U.S. at 814–15 (internal quotation and citation omitted) (emphasis added). The controversy in this case is whether Defendants accessed Engebretson's private data for an impermissible purpose.

**2.** *In Pari Delicto*

The *in pari delicto* doctrine stands for the "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 837 (8th Cir. 2005) (quoting Black's Law Dictionary 806 (8th ed. 2004)). There is no evidence that Engebretson participated in Defendants' allegedly impermissible accesses of her personal information. Therefore, the *in pari delicto* doctrine does not apply.

**H. Rule of Lenity**

Defendants also argue Engebretson's claims are barred by the rule of lenity. "[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." Maracich v. Spears, 133 S. Ct. 2191, 2209 (2013). Defendants argue that the language in the government function exception is ambiguous because there is no clear guidance in the text of the DPPA as to what Congress intended by the phrase "carrying out its functions" when referring to government agencies. This argument fails because there is no ambiguity that accessing a motor vehicle record to satisfy personal curiosity does not constitute a government or law enforcement function.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 157] is **GRANTED IN PART** and **DENIED IN PART** as follows:.

1.      Count I against Defendants Michael Sternquist, Keith Czarnecki, and Thomas

Williams is **DISMISSED** as barred by the statute of limitations.

2.     Count I against Defendants City of Bloomington, City of Coon Rapids and City

of Mounds View remains.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 26, 2016.